## LOUISIANA RY. & NAV. CO. et al. v. CASH GROCERY & SALES CO., Inc.

### No. 1209.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellants.

Laycock & Moyse, of Baton Rouge, for appellees.

ELLIOTT, Judge.

Louisiana Railway & Navigation Company claims to be the owner, and Louisiana & Arkansas Railway Company claims to be the lessee under the owner, of the rails, switch fixtures, spikes, fastenings, angle bars, etc., which Louisiana Railway & Navigation Company furnished in the construction of spur tracks located on the square in suburb Waller, bounded by Laurel, Waller, Rose alley, and Main streets in the city of Baton Rouge, La. Claiming in the way stated, they brought suit against Cash Grocery & Sales Company, Inc., to compel recognition of Louisiana Railway & Navigation Company, as owner, and Louisiana & Arkansas Railway Company, as lessee under the owner, of the property, described in their petition, with the right to remove said property from the spur tracks in which it has been used and to compel Cash Grocery & Sales Company, Inc., to deliver same to them, including some already taken up and stored on the premises.

The plaintiffs allege that Cash Grocery & Sales Company, Inc., is the owner of that portion of the land outside of plaintiffs' right of way on which the steel has been laid; that they have the right to take up and remove the steel, including that which has been taken up and stored on the premises, but that Cash Grocery & Sales Company, Inc., refuses to permit them to do so.

The defendant for answer denies plaintiff's alleged ownership of the steel and sets up ownership and possession in itself, basing its ownership and possession on a sheriff's sale. made in the foreclosure of a conventional mortgage, granted by Thibodeaux & Harrison, Inc., to the Bank of Baton Rouge, and title thereto from the Bank of Baton Rouge. Defendant prays to be recognized as owner of the steel, but alternatively, in the event the property is decreed to belong to the plaintiffs, it then pleads that it is entitled to have said tracks remain for its use.

There was judgment in the lower court dismissing plaintiffs' demand. The plaintiffs have appealed.

The evidence shows that the spur tracks, one of which is 307 feet in length and the other presently but 101½ feet in length, were constructed under written agreements entered into between Louisiana Railway & Navigation Company and Thibodeaux & Harrison on December 1, 1922, and December 9, 1924, respectively. The last agreement contemplated and provided for a track 243 feet long, but it was constructed to the length of only 218

feet of which 116½ feet has been taken up by consent, and the steel, which entered into it, has been stored on the premises, subject to the right of the plaintiffs and defendant as may be determined in the present suit. The track taken up not counted leaves 408½ feet of spur track on defendant's land, which plaintiffs desire to take up, etc. The agreements relied on by the plaintiffs as showing their ownership of the steel and right to remove it are annexed to and made part of their petition.

It is shown that Louisiana Railway & Navigation Company has never parted with its title to the steel and is the owner thereof, unless, as a result of having been laid and used in the construction of said spur tracks, it became immovable by destination.

The record shows that on January 5, 1923, William Thibodeaux and Thomas T. Harrison, constituting the firm of Thibodeaux & Harrison, transferred to Thibodeaux & Harrison, Inc., by authentic act the ground, with all the buildings and improvements thereon, upon which the spur track, contemplated by the agreement of December 1, 1922, had been constructed; but the act of sale does not mention the spur track. Thibodeaux & Harrison, Inc., however, on December 7, 1923, without right from anybody, that we can find from the record, granted to the Bank of Baton Rouge a conventional mortgage for $16,000 on the ground, which it had acquired from Thibodeaux & Harrison "including 320 feet of spur track." On April 4, 1927, Thibodeaux & Harrison, Inc., granted, by authentic act in favor of the Bank of Baton Rouge, a further conventional mortgage for $25,000 on the same property, "including 320 feet of spur track." On February 11, 1928, Thibodeaux & Harrison, Inc., granted, by authentic act in favor of the Bank of Baton Rouge, a further conventional mortgage for $35,000 on said property, "including 320 feet of spur track."

On March 15, 1930, the sheriff of the parish of East Baton Rouge, in the execution of an order of seizure and sale, issued against Thibodeaux & Harrison, Inc., at the instance of the Bank of Baton Rouge in the foreclosure of its last-obtained mortgage, seized and after due advertisements sold the property, including 320 feet of spur track, to Bank of Baton Rouge. On July 28, 1930, the Bank of Baton Rouge, by authentic act, sold and delivered the property, including the 320 feet of spur track, to Cash Grocery & Sales Company, Inc.

Under the evidence, the Bank of Baton Rouge accepted the mortgages from Thibodeaux & Harrison, Inc., on 320 feet of spur track in good faith, and in like good faith bought in the spur track as part of the property upon which it had been granted mortgages. In like manner it appears that Louisiana Railway & Navigation Company was not aware that Thibodeaux & Harrison, Inc., had imposed said mortgages on the spur tracks, and that said spur tracks had been sold in foreclosure proceedings to Bank of Baton Rouge, until it sought to enter on the premises for the purpose of taking up the steel.

The agreements entered into between Louisiana Railway & Navigation Company and Thibodeaux & Harrison are alike, except in the first agreement the spur was to be built from the main track to the warehouse of the second party for the "purpose of serving their building material warehouse," while in the second agreement the spur was to be built from the main track to the gravel plant of the second party for the "purpose of providing additional tracks to serve their gravel plant." There was the difference in dates and lengths, but in other respects the agreements are alike.

The parts of the agreements of most importance in acting on the present controversy are as follows:

The stipulations that "for and in consideration of the sum of $1.00 in hand paid to the party of the first part by the party of the second part * * * and the further stipulations and agreements to be kept and performed by the party of the second part, the said Railroad Company hereby agrees that it will lay a siding or spur track from its main track to the warehouse (in the first contract) and gravel plant (in the second) and in the first contract the spur is for the purpose of serving their building material warehouse and in the second for the purpose of providing additional tracks to serve their gravel plant."

"The said railroad company hereby agrees to furnish at its own cost the necessary materials including rails, switch fixtures, spikes, fastenings etc. and the labor necessary to lay the said siding or spur track. * * *

"The said second party hereby agrees on its part to do all the necessary grading required for the said siding or spur track. * * *

"The said second party agrees to furnish all the land necessary for the right-of-way outside of the right-of-way of the said Railroad Company * * * and all the cross ties, switch ties and bridge timbers required for the construction. * * *

"It is hereby mutually agreed that all of said rails, switch fixtures, fastenings etc., furnished by said Railroad Company, shall, during the existence of this agreement and at all times hereafter, be the property of the said Railroad Company; and also, that the said second party shall have no right, title or ownership in the said spur track nor in the rails or other materials with which the said track is laid, excepting cross ties, switch ties and bridge timbers which are furnished by it. * * *

**60**

"It is further mutually agreed between the parties hereto, that, if at any time during the continuance of this agreement, the said second party shall from any cause abandon or discontinue the business contemplated to be done on the said track, under this agreement, for a period of 90 days * * * then in that event or when this contract is otherwise terminated, as herein provided, the said Railroad Company shall have the right to take up said rails, fastenings and other materials, except cross ties, with which the track is laid and to remove and use said materials at any other point on its road for any other purpose without let or hinderance or molestation on the part of said second party and this agreement shall become null and void and as of no effect between the parties hereto. * * *

"It is further agreed between the parties hereto, that the said second party shall have no right or authority to sell, lease, convey or in any other form assign to any other party the right to use said spur track or siding without the consent of the Railroad Company in writing authorizing such an assignment or transfer to be made."

■■ The business contemplated to be done on the spur tracks was terminated, abandoned, discontinued within the meaning of the contracts in January, 1930, when the property was seized and sold to Bank of Baton Rouge. When that took place, Louisiana Railway & Navigation Company was no longer under obligation to leave its steel tracks. Its right accrued to take up the steel. It is not claimed that the abandonment and discontinuance provided for did not take place. The right of the plaintiffs is resisted on the ground that the steel was attached to the immovable by destination and Bank of Baton Rouge became the owner of the tracks under the foreclosure sale and transferred same to defendant.

Under the terms of the contracts, the steel remained the property of Louisiana Railway & Navigation Company, Thibodeaux & Harrison disclaiming ownership of the same by use of the language, which forbids us entertaining defendant's theory that same became immovable by destination. The steel was not attached permanently to the land. The right to remove same whenever Thibodeaux & Harrison abandoned or discontinued the use of the tracks was just as binding as any other part of the agreement. Thibodeaux & Harrison could not transfer their right to the spur tracks to any other person without the written consent of Louisiana Railway & Navigation Company, and it is not claimed that consent was given.

The agreements were legal and binding. "Agreements legally entered into have the effect of laws on those who have formed them." Civil Code, arts. 1901 and 1945.

■ We have already seen that Thibodeaux & Harrison did not convey this 320 feet of spur track to Thibodeaux & Harrison, Inc. Consequently, when Thibodeaux & Harrison, Inc., included same in a mortgage to the Bank of Baton Rouge, the mortgage was, to that extent, invalid and conveyed no right. For this subject, see Civil Code, arts. 3300, 3301, 3304, and 3308. Other provisions of the law are to the effect that "no one can transfer to another more right than he has himself." Code of Practice, art. 23; Civil Code, arts. 822, 2015. The law provides that the sale on execution transfers only the rights of the debtor, such as they are. Civil Code, art. 2620. The sale of a thing belonging to another person is null. C. C. art. 2452.

■ Under the contract between Louisiana Railway & Navigation Company and Thibodeaux & Harrison the steel was not attached permanently to the land. It therefore remained a movable and the property of the railroad company, while the land on which it was situated belonged to another owner. It has been held that: "A railway is not an immovable, either by nature or destination, when the soil on which it is laid belongs to another; it is, consequently, not affected by judicial or legal mortgages, nor susceptible of being mortgaged unless authorized by a special act of the legislature." State v. Mexican Gulf Railway Co., 3 Rob. 513.

In Woodward v. Railway Co., 39 La. Ann. 566, 2 So. 413, 414, the court, citing the case just mentioned, said: "As the railroad was constructed on the soil of another, it was movable property, and as such governed by the law regulating pledges on movables."

Richardson v. Item Co., Ltd., 172 La. 421, 134 So. 380, is even more pertinent. For the purpose of brevity we quote from the syllabus:

"Automatic sprinkler system being attached to building by lessee, not owner, was not 'immovable by destination.' * * *

"Movable becomes 'immovable by destination' when owner unites it with his realty, intending that movable shall be merged and associated with destiny of realty. * * *

"Movables placed on immovable by lessee as improvement or addition remain movables, and may be removed by lessee unless attached with lime and cement. * * *

"Building owner, if intending to sell sprinkler system with building, could convey no title thereto, where sprinkler was installed and owned by lessee."

In the present case, the ownership of the steel which entered into the spur tracks, and the ownership of the land on which the tracks were laid, were never united in the same person. Consequently, the above-mentioned cases must be looked on as governing the situation. Baldwin v. Young, 47 La. Ann. 1466, 17 So.

883, has been in one important matter overruled, but it is in harmony with the above cases to the extent that it upholds the right of the owner of a heater, placed by him in a building, belonging to another party, who sought to have the heater subjected to a mortgage, granted on the building by the owner of the building.

In Louisiana & Arkansas Ry. Co. v. Louisiana Ry. & Navigation Co., 125 La. 756, 51 So. 712, 714, the court, acting on an agreement, which we take to be similar to the one entered into between Louisiana Railway & Navigation Company and Thibodeaux & Harrison, said with reference to the rights of the defendant: "Defendant's interest in the spur track consists of its ownership of the rails, ties, etc., constituting the superstructure of the roadbed." So Thibodeaux & Harrison, Inc., by mortgaging the spur tracks to Bank of Baton Rouge and the foreclosure sale thereunder did not divest the existing ownership of the steel by the railway company nor impair its right to remove same from the tracks.

The cases, Morgan's L. & T. R. R. & S. S. Co. v. Himalaya Planting & Mfg. Co., 143 La. 460, 78 So. 735, and Cladwell v. Laurel Grove Co., 175 La. 928, 144 So. 718, involved the continued existence of a vendor's privilege on movable property, sold and delivered but not paid for. The issue in the present case involves the continued ownership of movables not sold but laid on a track under an agreement with the owner of the land on which the track was laid, that the ownership of the movables should remain unchanged and the movables might be taken up, should the track be abandoned or its use discontinued for the purpose for which it was constructed.

Defendant contends that Louisiana Railway & Navigation Company has lost in favor of defendant its right to the steel, because the contract between it and Thibodeaux & Harrison not having been recorded in the Conveyance Book, the Bank of Baton Rouge bought in the spur tracks without notice of any equity on the part of the railway company in the steel; that all equity on the part of the railway company was cut off and barred by the unprotested sheriff's sale.

As heretofore stated, the steel continued to be movable property and contracts concerning movables do not have to be recorded in the Conveyance Book. Then again the registry law, which is the basis for defendant's theory in this respect, applies to immovables only.

Another objection is that the bank does not claim to have derived ownership of the steel from any one, who appeared as its owner by title derived from the true owner. Thibodeaux & Harrison, Inc., never had any title to the steel. The only authorities we have been able to find are cases in which the issue was as to the ownership of an immovable. In a contest, concerning the ownership of an immovable, if the parties do not claim under the same author, the ownership depends on the strength of their respective titles and not on a question of registry. See Kittridge v. Hebert, 9 La. Ann. 154; Coucy v. Cummings, 12 La. Ann. 748; Logan v. Herbert, 30 La. Ann. 727; White v. Sheriff, 32 La. Ann. 130, page 133; McCall v. Irion et al., 41 La. Ann. 1126, page 1131, 6 So. 845.

Defendant urges that the railway company stood by and knowingly permitted the spur track to be sold and is thereby estopped from asserting ownership, when it should have spoken in defense of same and did not. We are satisfied from the evidence that the railway company was not aware that Thibodeaux & Harrison, Inc., had imposed mortgages on the spur track, nor that the track was advertised for sale in foreclosure proceedings, nor that it had been sold at sheriff's sale until it applied to defendant for permission to enter on the land for the purpose of taking up the steel. We therefore hold that the railway company is not estopped from asserting its ownership of the steel and the right to take it up and remove it as stipulated in the contracts which it entered into with Thibodeaux & Harrison.

Defendant urges the prescription of one year as a bar to plaintiff's suit. As less than a year elapsed after the sheriff's sale before the present suit was filed, the prescription pleaded is without avail.

Defendant urges that its business is of public service character and that the tracks in question are needed for the conduct of same. Defendant's contention in that respect is one for the consideration of Louisiana Public Service Commission. We find that Louisiana Railway & Navigation Company is the owner of the property described in its petition, that Louisiana & Arkansas Railway Company is the lessee of the same from the owner, and that they are entitled to a judgment as prayed for.

For these reasons, the judgment appealed from herein is found to be erroneous and is therefore annulled, avoided, and set aside, and it is ordered, adjudged, and decreed that Louisiana Railway & Navigation Company is the owner of the rails, switch fixtures, spikes, angle bars, and the other property claimed in its petition; that Louisiana & Arkansas Railway Company is the lessee thereof; that the said plaintiffs are entitled to enter on the land, described in their petition, and take up and remove the steel from the spur tracks thereon, including that already taken up; that Cash Grocery & Sales Company, Inc., defendant, deliver said steel to plaintiffs and permit their entry for the purpose stated.

Nothing in this decree is to be considered as interfering with any power or authority vested in the Louisiana Public Service Commission under the Constitution and laws of this state.

The defendant-appellee to pay the costs in both courts.