SUMMERS, Justice.
 

 As subrogee to Illinois Central Railroad Company, plaintiff American Creosote Works, Inc., a Texas Corporation, claims $12,000 from defendant George J. Springer for the value of “certain trackage” sold by Springer from a lot of ground he acquired from plaintiff. Plaintiff had, in turn, acquired the ground from its predecessor American Creosote Company, Inc., a liquidated Louisiana corporation. The judge of the trial court sustained an exception of no cause of action filed by defendant to plaintiff’s original and supplemental petition. This decree was affirmed by the Fourth Circuit. 232 So.2d 532. We granted certiorari, 255 La. 803, 233 So.2d 247.
 

 The allegations of the plaintiff’s petition and its supplement represent that on March 31, 1949 Illinois Central Railroad Company leased to plaintiff’s predecessor cer
 
 *119
 
 tain trackage laid by the Railroad Company across a certain portion of land belonging to plaintiff in Jefferson Parish. Under the terms of the lease agreement, the Railroad Company remained the owner of the trackage which plaintiff was obligated to return at the conclusion of the lease. Failure to return the trackage as agreed obligated plaintiff to pay the Railroad Company $12,000 as a penalty.
 

 Plaintiff sold the property to defendant Springer on October 8, 1962. The petition alleges “The act of sale did not, because it could not, include the actual steel track-age emplaced on the property by the Illinois Central ■ Railroad Company by virtue and pursuant to the lease agreement * * It was alleged, moreover, that defendant Springer .was informed before the passage of the act of sale that the trackage did not belong to plaintiff; and, consequently, the trackage would not, and could not, be sold to him, and the act of sale was passed with the understanding between the parties that the trackage was not included.
 

 Thereafter, as the petition represents, during April 1964, Springer sold the switchtrackage and caused it to be removed from the premises, whereupon plaintiff and the Railroad Company demanded that Springer return the trackage or its value, which Springer refused to do. The Railroad Company,- accordingly, demanded and received payment from plaintiff of the $12,000 penalty provided for in the lease. By this. payment, plaintiff became subrogated to the rights of the Railroad Company under the lease. As subrogee, plaintiff seeks to recover the penalty it paid for Springer’s failure to return the trackage.
 

 To the foregoing allegation in plaintiff’s petition Springer filed an exception-of no cause of action which was sustained by the trial judge and affirmed on appeal. It is this determination we are reviewing.
 

 Although the result reached by the Court of Appeal is not affected by our views on this question, because of several references in its opinion and in briefs to facts and documents which form no part of the petition, it should be observed at the outset that only the well-pleaded facts in the petition or documents made a part thereof, which must be accepted as true, can be considered in ruling on an exception of no cause of action. Pertinent portions of Article 931 of the Code of Civil Procedure so provide: “No evidence may be introduced
 
 at any time
 
 to support or controvert the objection that the petition fails to state a cause of action.” (Emphasis added.) See also Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968). Thus the statement in the Court of Appeal opinion under review to the effect that the entire record must be considered when deciding an exception of no cause of action and a like statement in Succession of Pickett, 189 So.2d 670, 671
 
 *121
 
 (La.App.1966), cited as authority, are both erroneous and cannot be approved. 232 So.2d 532, 535.
 

 Another case coming to our attention which has recognized and approved this erroneous rule since Article 931 of the Code of Civil Procedure became effective on January 1, 1961 is Rozas v. Evangeline Parish Police Jury, 214 So.2d 398 (La.App. 1968), cert. denied, 252 La. 1018, 215 So.2d 646 (1968), with two justices dissenting. Insofar as this latter case purports to stand for the proposition that there are exceptions to the rule that no evidence may be introduced
 
 at any time
 
 to support or controvert the objection that a petition fails to state a cause of action, that case is likewise overruled.
 

 When a constitutional .question is not involved, a decent respect for the Legislature’s law-making prerogative requires that courts not alter the clear and evident meaning of legislative pronouncements by creating exceptions not announced there.
 

 Plaintiff’s brief presents as one of two principal issues the contention that the “railroad iron” described in its petition cannot be an immovable. This characterization would lead us to infer that we are dealing with movables — assorted pieces of iron — at the crucial point in time ' when Springer bought the land and when the character of the trackage as a movable or immovable was determinative. The petition, however, makes no reference to “railroad iron”. It refers instead to “certain trackage laid across petitioner’s property by the said railroad company” and to “steel trackage emplaced on the property.”
 

 These latter two very pertinent allegations, accepted as true for the purpose of this exception, are being noted at the outset, for they place an entirely different perspective on the “facts” alleged than would be signified by use of the words “railroad iron”. In contrast to the circumstance that “railroad iron” is not referred to at any time in the original or supplemental petition, the word “trackage” and “switch-trackage” are used thirteen times. The distinction is notable — “railroad iron” connotes assorted pieces of iron unattached to the soil, whereas “certain trackage laid across petitioner’s property” or “steel trackage emplaced on the property” refers to tracks forming a part of an installation or construction on the land.
 

 It is noted that the lease between plaintiff’s predecessor as lessee and the Railroad Company was attached to the petition and made a part thereof by reference. That document refers to the fact that “Lessee has constructed certain tracks”, and it refers to “the approximate location of said tracks being shown in red on the plat hereto attached.” In addition, the lease provides that “The Railroad Company has previously delivered to Lessee at Southport, Louisiana, (the property in question) a suf
 
 *123
 
 ficient amount of second-hand rail, together with angle bars, to construct the said tracks.” It is doubtful that this language of the lease would help to support plaintiff’s cause of action.
 

 Nevertheless, if we find the railroad became an immovable by nature when constructed on the land Springer acquired, we cannot consider the lease insofar as Springer is concerned, for it was not alleged that he was a party to that transaction or that the lease was recorded. The doctrine of McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910), holds that all contracts affecting immovable property, which are not recorded in the parish where the property is situated, “shall be utterly null and void, except between the parties thereto” even though the parties may have had actual notice thereof gained dehors the record. La.Civil Code art. 2266. See also La.Civil Code art. 2246.
 

 Another issue should be disposed of preliminarily: If plaintiff’s allegation to the effect that it was “understood” that the trackage would not be sold was admissible evidence, which would alter the terms of the sale, a cause of action would perhaps be properly stated. But under the circumstances of this case, even if he was informed that the trackage did not belong to plaintiff and could not be sold with the land, Springer is nevertheless entitled to receive the trackage as an “accession” of the property, if it is concluded that the “trackage” was an immovable by nature. La.Civil Code art. 2461. For in this State “Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.” La.Civil Code art. 2276. And “The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.” La.Civil Code art. 2236. See also La. Civil Code art. 2238; Gulf States Finance Corp. v. Airline Auto Sales Inc., 248 La. 591, 181 So.2d 36 (1965); Krauss v. Fry, 209 La. 250, 24 So.2d 464 (1946); Unity Industrial Life Ins. Co. v. Dejoie, 202 La. 249, 11 So.2d 546 (1942); Franton v. Rusca, 187 La. 578, 175 So. 66 (1937); and Garland v. Dimitry, 167 La. 262, 119 So. 42 (1928).
 

 In Franton v. Rusca, the applicable rule was expressed as follows:
 

 * * * in the absence of any allegation of fraud or error, conditions, and stipulations beyond those expressed in an authentic act, and what may have been said before, or at the time of, or since the execution thereof, can be proven only by means of a counter-letter or by the use of interrogations on facts and articles.
 

 Plaintiff’s petition contains no allegation of fraud or error, and it must, therefore,
 
 *125
 
 stand or fall without the assumption that an “understanding” was had that the sale was to he made excluding the trackage.
 

 As our discussion has revealed, the principal issue for resolution is whether, under the facts alleged, “trackage” is an immovable within the contemplation of Article 464 of the Civil Code providing that “Land and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.” A finding that the railroad was an immovable at the time Springer acquired the land would mean he acquired it free of the obligations imposed by the lease because he was not a party to the lease and the lease was not recorded. It could not, therefore, have any effect on Springer.
 

 In like manner, such a finding would require that any “understanding” outside the sale itself not be considered. Evidence outside the sale could not alter its terms because the petition contains no allegation of fraud or error; allegations which are prerequisites in law before a written sale may be altered by verbal or other evidence outside the sale itself.
 

 In our approach to the problem, we consider it entirely acceptable to make certain inferences of fact based upon allegations contained in the petition referring to the trackage as “certain trackage laid across petitioner’s property by the said railroad company” and to “steel trackage emplaced on the property”. The dictionary refers to trackage as “a line of railway track”. Webster’s 3rd ed. Such an inference concerning a railroad constructed on land was properly drawn in Morgan’s Louisiana & T. R. & S. S. Co. v. Himalaya P. & Manufacturing Co., 143 La. 460, 462, 78 So. 735, 736 (1918) to this effect:
 

 , It will hardly be denied that a railroad is a “construction,” or that, when constructed, it has its foundations in the soil, as much as, or more than, many plantation buildings, bridges, and fences; nor as we think, can it be successfully denied that, when the bed of such a road has been graded and surfaced, the cross-ties placed in position, the rails laid upon and spiked to the ties, secured or connected, with angle irons and fish plates, and the spaces between the ties filled with ballast, a new and distinct thing is created in which ties, rails, spikes, irons, plates, and ballast lose their character as movables, and their identities, for all the purposes of the vendor’s privileges, since such privileges can no more be enforced with respect to its several constitutents without destroying the thing into which they have thus been merged than it can be enforced with respect to the canvas upon which a picture has been painted without destroying the picture.
 

 This language from the Morgan Case is nothing more than a common sense inference drawn from the use of words which have an ordinary, accepted meaning which
 
 *127
 
 any reasonably objective community standard would support. It is like drawing a conclusion that reference to a
 
 barn
 
 means the
 
 barn
 
 has a
 
 door,
 
 an inference which we consider entirely plausible. Nothing presented has persuaded us that we are not dealing with a railway built similar to the Morgan Case description of a railway.
 

 The act of sale of the land to Springer is attached to the briefs. Although the sale is not properly before us, the unmistakable tenor of plaintiff's petition is that the “trackage” was not specifically conveyed.
 

 The rule of law repeatedly recognized by our courts is that things immovable by nature follow the ownership of the soil. A finding that the trackage has become immobilized by its emplacement on the land is therefore determinative. A transfer of an immovable would therefore include all things classified as immovable by nature. These things form an economic unity with the ground and, in principle, are not susceptible to separate real rights. Party intentions carry little weight; the law does not encourage separate ownership of the ground and its component parts. See 1 Yiannopoulos, Louisiana Practice— Civil Law of Property §§ 55-57 (1966) and the numerous cases cited in footnote 203 of Chapter IV, Movables and Immovables, of that work, and see also Yiannopoulos, Movables and Immovables in Louisiana and Comparative Law, 22 La.L.Rev. 517 (1962).
 

 Rationally a railroad track must be regarded as a “construction” under Article 464' of the Civil' Code; it is so regarded in France under the c&rre'sponding article of the Napoleonic Code. See Comment, 8 Tul.L.Rev. 280 (1933). Thus, as we view the petition, this “trackage” - or railroad is firmly incorporated into the ground and must be regarded as an immovable by nature — a component part of the land — insofar as Springer was concerned when he acquired the land upon which it was constructed. See Yiannopoulos,
 
 supra.
 

 We recognize that the track belonged to the Railroad Company at the time Springer acquired the land. But the law provided a means whereby the Railroad Company could protect its interest in the trackage. An appropriate document properly recorded which would have placed Springer on notice and compelled him to acquire the land and railroad subject to the rights of the Railroad Company would have sufficed. La.Civil Code art. 2266. Since this was not done, Springer- acquired the land free of any claim the Railroad Company might have to the land or any construction thereon which had become immovable by nature. E. g., see La.Civ.Code arts. 3249(3) and 3272. The security of land titles in this State rests to a large extent upon this public record doctrine. La.Civil Code art. 2266; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910). Cf. La.Const, art. 19, § 19.
 

 
 *129
 
 The Morgan Case, as previously noted, has correctly classified a railroad track as a “construction” under Article 464 of the Civil Code. See Morgan’s Louisiana & T. R. & S. S. Co. v. Himalaya P. and Mfg. Co., 143 La. 460, 78 So. 735 (1918). The subsequent decision of this Court in Caldwell v. Laurel Grove Co., 175 La. 928, 144 So. 718 (1932), apparently overruled the Morgan Case and held that a railroad track installed on land remained a movable with respect to the vendor’s lien asserted by the vendor of the track. We could probably distinguish the two cases on the basis of the status of the parties involved or other facts, but we doubt that the distinctions would be valid insofar as the real issue: whether rails constructed into a railway on land become immovable by nature. As to this proposition, the two cases are irreconcilable. For if a thing is immovable by nature, it is immovable as to everyone.
 

 In order to decide this case as we are convinced it should be decided, we must overrule the Caldwell Case. We do this without undue reluctance, feeling strongly that our view is a more realistic application of the law to these facts, and in the further hope that thereby some order will come to the jurisprudence on a question which has received varying treatment by the courts. Caldwell v. Laurel Grove Co., 175 La. 928, 144 So. 718 (1932); Morgan’s Louisiana & T. R. & S. S. Co. v. Himalaya P. & Mfg. Co., 143 La. 460, 78 So. 735 (1918); Woodward v. American Exposition Ry. Co., 39 La.Ann. 566, 2 So. 413 (1887); State v. Mexican Gulf Ry. Co., 3 Rob 513 (La.1843); Louisiana Ry. & Nav. Co. v. Cash Grocery & Sales Co., 150 So. 57 (La.App.1933).
 

 Accordingly, for the reasons assigned, the judgment of the Court of Appeal is affirmed and the exception of no cause of action filed on behalf of defendant is sustained.