**In the Matter of KEN BOATMAN, INC., d/b/a Boatman Motel, Bankrupt.**

**No. 24813.**

United States District Court, W. D. Louisiana, Shreveport Division.

April 24, 1973.

Addendum May 4, 1973.

---

7. *See* New Jersey Rules of Evidence, Rule 26; In re Richardson, 31 N.J. 391, 157 A.2d 695 (1960).

James L. Davis, Many, La., for the bankrupt.

Archie M. Simon, Shreveport, La., for the trustee.

M. Douglas Adkins, Dallas, Tex., Daniel T. Murchison, Natchitoches, La., for the receiver.

John S. Pickett, Sr., Many, La., for the creditors Hipplers.

Dewey E. Burchett, Jr., Bossier City, La., for Shreveport Utility Co.

Donald G. Kelly, Natchitoches, La., for W. G. Dowden.

## RULING ON REVIEW

DAWKINS, Chief Judge.

L. E. Creel III, Trustee in Bankruptcy for J'Ville Homes, Inc., has filed this petition for review of the judgment of the Referee on his application to reclaim, on petition and rule by Kenneth D. Boatman individually to sell five J'Ville units and refer the conflicting claims of title, liens, etc., to the proceeds, and for ranking of liens. The foregoing reaches us on a certificate of review.

Basically, petitioner requests that we find additional facts besides those found by the Referee and also to find facts contrary to those found by the Referee. This is not the Court's function in bankruptcy matters on review. General Order 47 provides that this Court shall accept the findings of the Referee unless they are clearly erroneous, or that the Referee's decision will not be set aside unless there is plain error or abuse of discretion. 2 Collier § 27.05, pp. 1097 through 1100.

We carefully have studied the entire record and are convinced that the Referee's findings of fact are not clearly erroneous, but, on the contrary, amply are supported by the evidence presented.

Petitioner contends that the units involved could not become immovable by nature unless the owner places the object upon the property. This would be true if we were concerned with Louisiana

Civil Code Article 467. However, the applicable Article is 464:

"Land and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature."

The following jurisprudence stands for the proposition that, under Article 464, the owner need not place the object but anyone may do so, including the lessee, and if such is done, the building or other construction becomes immovable by nature. Lighting Fixtures Supply Co. v. Pacific Fire Insurance Co. of N. Y., 176 La. 499, 146 So. 35 (1933); Westwego Canal and Terminal Company v. Pizanie, 174 La. 1068, 142 So. 691 (1932), citing Vaughn v. Kemp, 4 La.App. 682; State Department of Highways v. Illinois Central RR Co., 256 So.2d 819 (La.App. 2d Cir., 1972).

In answer to petitioner's argument that inasmuch as the particular units were once mobile, and are easily removable, they are therefore not immovables by nature, we direct attention to Ballard's, Inc., v. Evans, 241 So.2d 557 (La.App. 2d Cir., 1970), where the Court held that a truck body which rested on concrete blocks, with the apparent intention that it would become permanently part of the premises was an immovable by nature under Article 464. The following comment is made by Planiol in Volume 1 of his Treatise, § 2208:

"In order that a construction be immovable, it is not necessary that it be built to last forever. Buildings put up for exposition are immovable, even though they may be destined to be destroyed in several months, sometimes in several weeks. But portable constructions set up on the surface of the soil for several days, re-erected elsewhere and transferred from place to place, such as booths at fairs and tents of an itinerant circus are not immovables. This is because these light edifices have no fixed place, they are movables even when attached to the soil by means of ropes and stakes to withstand the wind."

Consequently, we agree with the Referee that, considering all the facts shown here, in this particular instance and in these particular circumstances, it was the apparent intention of the parties that these units would become permanently part of the premises and, considering all objective manifestations, would be considered as intended to be permanently affixed to the soil. (See also American Creosote Co. v. Springer, 257 La. 116, 241 So.2d 510 (1970).)

Finding no error and being in complete accord with the Referee's conclusions, we affirm his findings and rulings in all particulars.

A proper decree, pursuant to our Local Rule 9, should be presented for our signature.

## ADDENDUM

It has come to our attention that, in our original opinion herein, we did not specifically refer to whether L. E. Creel, III, trustee in Bankruptcy for J'Ville Homes, Inc., has a valid vendor's privilege upon the units involved. We did not specifically allude to that particular issue because it is axiomatic that once an object becomes an immovable by nature the vendor's privilege is destroyed, even though the thing can be disassociated without damage to it. We note the following, from American Creosote Company v. Springer, 232 So.2d 532 (La.App., 4th Cir., 1970) aff'd 257 La. 116, 241 So.2d 510 (1970):

". . . that a vendor's lien and privilege on the thing sold is not lost by the attachment of the thing sold to a structure from which it can be removed without material damage, but this must be restricted to the type of case cited as jurisprudence in Caldwell, i. e., movables that become immovable by destination but remain a separate entity apart from the immovable to which they are attached.

"If this principle of law is extended to its ultimate it may then be ap-

plied to a prefabricated house or even a house as normally constructed. The component parts are susceptible of identification and can be removed without affecting the ownership of the lot or causing material damage thereto, for when removed the lot will return to its appearance as it was before the house was placed on it. The extension of this concept would embrace innumerable constructions which have long been regarded as immovable by nature, although no such application of the principle enunciated in the Caldwell case could be seriously argued. A railroad is a construction and the rails, plates and other irons when attached to the cross ties with spikes are no less a component part of the construction than the gutters, down spouts, windows or doors that are a part of the building to which they are attached.

"We interpreted the Caldwell case as a qualified or limited overruling of the Morgan case and pointed out that the Supreme Court in Caldwell did not consider whether the railroad in question was a 'construction' such as to bring it under the provisions of LSA–C.C. Art. 464. On this point it was our opinion that Caldwell did not overrule Morgan. We fail to find the Caldwell opinion a reversal of the Supreme Court's former opinion in Morgan that a railroad is a construction and immovable by nature, and we, therefore, hold that a railroad is a construction and immovable by nature." At pp. 539 through 540.

These units ceased to be movable and became part and parcel of an immovable, *i. e.*, a motel on the leased premises constructed and intended for permanent usage.

█ Moreover, it is clear that this sale was completed in Texas, and, consequently, Article 3227 of the Louisiana Civil Code, which provides for the vendor's privilege on movables, is not applicable:

"Louisiana courts have long held that the preference granted by this statute does not extend to vendors who make sales outside the State of Louisiana." In Re Hoover, 447 F.2d 195 (5th Cir., 1971).