924

In the Matter of KEN BOATMAN, INC.,
d/b/a Boatman Motel.

L. E. CREEL, III, Receiver for J'Ville
Homes, Inc., Appellant,

v.

KEN BOATMAN, INC. d/b/a Boatman
Motel, and Bert Harper, Trustee,
Appellees.

No. 73-2673.

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1974.

Rehearing Denied Jan. 10, 1975.

M. Douglas Adkins, Dallas, Tex., Daniel T. Murchison, Natchitoches, La., for appellant.

Archie M. Simon, Shreveport, La., for Bert Harper.

J. S. Pickett, Sr., Many, La., Harvey Lewis, Tucker H. Couvillon, III, New Orleans, La., for Susan R. Hippler, et al.

Dewey E. Burchett, Jr., Bossier City, La., for Shreveport Utility Co. and Bert Harper.

Donald G. Kelly, Natchitoches, La., for Bill Dowden and Bert Harper.

Before JONES, THORNBERRY and COLEMAN, Circuit Judges.

JONES, Circuit Judge:

The evidentiary facts from which this appeal arises are, for the most part, undisputed.

On May 13, 1970, Susan R. Hippler and seven others, herein called the Hippler heirs, made a written lease of land in Sabine Parish, Louisiana, to Trail Inns of America, Inc., for a ten year term commencing June 9, 1970. The lease was filed for record May 27, 1970. The lease gave the lessee an option to purchase and it contained a provision that any permanent fixtures or buildings placed on the land would become the property of the landowners at the termination of the lease. On June 20, 1970, Trail Inns made a written sublease of a portion of the property to Kenneth D. Boatman for nine years and eleven

months commencing July 1, 1970. This instrument provided for a ten year renewal if Trail Inns purchased the land leased to it by the Hippler heirs.

J'Ville Homes, Inc., is a Texas corporation with its place of business in Jacksonville, Texas. It was engaged in the manufacture of mobile homes. Boatman negotiated, in Louisiana, with the sales manager of J'Ville and placed through him an order for five trailer units to be constructed by J'Ville and delivered by it to the Sabine Parish location. In order to adapt the units for use in a tourist court, they were to be somewhat different in interior design from the usual mobile homes manufactured by J'Ville. Boatman agreed to pay cash for the units. He expected to procure the funds, which he did not have, by a bank loan.

While the units were being constructed Boatman prepared the land for use as a motel site by installing electric and water systems, septic tanks and connections, and sidewalks. A landscaping program was undertaken.

On July 6, 1970, the first two units arrived at the motel site from Texas, having been towed by truck over the highway. During July the other three units were delivered in like manner. Upon arrival the units were placed at the locations which had been prepared for them. The wheels and axles were removed. The record is not clear as to the disposition made of the wheels and axles. The referee stated that they were included in the delivery of the units to Boatman. One witness testified that he was informed that the wheels and axles were going to be returned to J'Ville and that the wheels were moved off the premises. No objection was made to this testimony which, in part, was hearsay. The referee's finding was not as broad as the statement of the witness. The hitch bar, the brake lights and the electric brake connections were left in place. The units were placed on concrete block foundations and made level by shims. Wooden skirts were placed around the bottom of each unit to con-

ceal the foundations. A pole was at each location and an electric connection was made from each pole to the unit. Water connections were made to an outlet at each location. Each of the units was connected by a plastic pipe to an underground septic tank. Wooden steps were constructed at the entrance to each unit. The installations were the same or substantially the same as at mobile homes which are to remain at a particular place for a period of six months or more.

During the second half of July 1970 Boatman found himself in difficulties with respect to his financing. He was advised that he should convert the operation into corporate form and this was done. The corporation, Ken Boatman, Inc., was organized on July 30, 1970, and corporate books were set up. The operation was in the corporate name from then on. On August 7, 1970, Ken Boatman, Inc., gave a promissory note with a vendor's lien chattel mortgage to J'Ville. This instrument was filed for record on November 20, 1970. The document was styled "Sale and Chattel Mortgage with Vendor's Lien and Privilege." The Boatman corporation at the same time gave Boatmen individually a note in the amount of $14,020 and a chattel mortgage on the units. The chattel mortgage was placed of record on October 15, 1970.

Shreveport Utility Company, Inc. filed a lien on September 2, 1970, for $7,843.10, for work and materials in the construction of the water and sewer systems. Six days later, on September 8, 1970, Dowden Plumbing and Electric Company filed a lien for sewer, water, and electric construction work in the amount of $923.83. These liens were filed within the period permitted by the Louisiana statute. The Hippler heirs obtained a state court judgment on January 14, 1971, terminating their lease to Trail Inns of America, Inc. This began the end of hope for a successful operation by Boatman.

Ken Boatman, Inc. filed a voluntary petition in bankruptcy in Louisiana.

**926**

Bert Harper became its trustee in bankruptcy. J'Ville Homes, Inc. filed a petition for a bankruptcy reorganization in Texas and L. E. Creel III became J'Ville's receiver.

The five motel units were scheduled as assets in the Ken Boatman, Inc. bankruptcy proceedings. The receiver of J'Ville asserted a chattel mortgage and a vendor's lien and privilege. Kenneth D. Boatman, individually, made a claim under the note and chattel mortgage given to him by Ken Boatman, Inc. at the time the operation of the motel was taken over by the corporation. The Hippler heirs asserted that the motel units became immovable by nature and a part of the land of which they were the owners. The trustee challenged the validity of the chattel mortgages given by Ken Boatman, Inc. He asserted that the units had become immovable by nature with the result that J'Ville lost any lien which it might have had. He claimed that the transfer from Boatman to the corporation defeated J'Ville's lien claim. The trustee and the Hipplers joined forces and agreed to share any recovery.

A considerable amount of testimony was taken before the referee. Ken Boatman testified that at the time the units were placed on the motel site he intended that they would not be moved.

Lien claims of the contractors which installed the plumbing and electric systems on the motel site were settled insofar as the trustee and the Hippler heirs are concerned. They are not of concern on this appeal. Under an order in the bankruptcy proceedings the units were sold and the net proceeds of the sale have been substituted as the subject matter of this litigation.

Among other things the referee determined that the title to the five units passed to Boatman individually when they were delivered by J'Ville, that the units became immovable by nature when they were constructed as a motel complex, that if any vendor's lien was created by the sale to Boatman it was destroyed because the units became part and parcel of an immovable and because possession of the units changed from Boatman personally to the Boatman corporation and then to the Hippler heirs, that the chattel mortgages claimed by Boatman personally and J'Ville were invalid because the units were immovable by nature at the time of the execution of the chattel mortgages, that the purported sale of August 7, 1970, from J'Ville to the Boatman corporation was invalid and thus did not give rise to a vendor's privilege, and that title to the units passed to the Hippler heirs upon the termination of the Trail Inns lease.

Judgment was entered in favor of the trustee, the Hippler heirs, Shreveport, and Dowden.

The district court affirmed the referee.

On the appeal before this Court the primary issues are whether the units were immovable by nature and whether J'Ville and its receiver had a vendor's lien and privilege. Both of these questions are to be determined by applying the law of Louisiana.

The findings of the district court are well supported by competent evidence. Its conclusions correctly pronounce and apply the controlling legal principles. These are well set forth in the published opinion of the district court. In the Matter of Ken Boatman, Inc., 359 F.Supp. 1062. The law as there stated, as applied to the facts there found, requires an affirmance of the judgment that the mobile homes were immovable by nature. Nothing further by this Court is required.

The judgment of the district court is Affirmed.